IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DENISE DIANN ABBRUZZO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:13-cv-2024-TMP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

## I.   Introduction

The plaintiff, Denise Diann Abbruzzo,[1] appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB"). Ms. Abbruzzo timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Based upon the court's

---

[1] It appears that the plaintiff's last name was misspelled on the complaint, and that the proper spelling is "Abbruzzo," not "Abruzzo." (See plaintiff's signature, Doc. 2-1). The Clerk is DIRECTED to change the spelling of the name in the style of the case.

review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

Ms. Abbruzzo was 48 years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a high school education. (Tr. at 27). She has past work experience as a bus driver, bartender, electrical line worker, waitress, and assistant manager at a restaurant. (Tr. at 150). She claims that she became disabled on November 7, 2008, due to lower back pain, injuries to her hands, bipolar disorder, and depression. (Tr. at 149).

When evaluating the disability of individuals over the age of 18, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are

not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs

exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove his or her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Abbruzzo has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of his decision. (Tr. at 29). He first determined that Ms. Abbruzzo met the insured status requirements of the Social Security Act through Dec. 31, 2013, and that she had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 21). According to the ALJ, plaintiff's depression, anxiety, bipolar disorder, substance abuse, degenerative disc disease of the lumbar spine, and bilateral hand trauma are "severe" impairments based on the requirements set forth in 20 C.F.R. § 404.1520(c). (*Id.*) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22). The ALJ did not find Ms. Abbruzzo's allegations of pain and restrictions on her ability to work to be entirely credible, citing the inconsistencies in her allegations and her reports of daily activities, the inconsistencies between her allegations and the RFC, and a lack of objective evidence that confirmed the severity of the conditions or that the conditions could

reasonably be expected to give rise to the symptoms alleged.[2] (Tr. at 26). The ALJ determined that Ms. Abbruzzo has the following residual functional capacity: to perform sedentary work with the additional limitations that she can never climb ladders, ropes, or scaffolds; can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs; can only occasionally finger with the non-dominant left hand; must avoid exposure to extreme cold and vibration; is limited to simple, routine, repetitive tasks with only casual contact with the public and co-workers; and must have a sit/stand option. (Tr. at 23).

Moving to the fourth step of the analysis, the ALJ concluded that Ms. Abbruzzo was unable to perform any past relevant work. (Tr. at 27). The ALJ considered the testimony of a vocational expert, and employed 20 CFR § 404.1569 as a guideline for finding that Ms. Abbruzzo is able to perform work in such sedentary unskilled occupations as surveillance monitor, grader/sorter, and machine tender. He further determined that such jobs exist in a significant number in the state and nation. (Tr. at 28). The ALJ concluded his findings by stating that Plaintiff "has not been

---

[2] The ALJ noted that, at the time of the alleged onset of disability, Ms. Abbruzzo was employed full-time as a waitress, and that her own account of the events that led her to quit her job did not indicate that she left her position due to her alleged disabilities. She testified at her hearing that she left her employment at the restaurant as part of a "mutual leaving," because her "disposition and tolerance wasn't to [her employer's] liking." (Tr. at 44-45). She explained that she was "smart alecky" and impatient with her co-workers, and would get agitated when her co-workers wouldn't do their jobs. (*Id.*)

under a disability, as defined in the Social Security Act, from November 7, 2008 through the date of this decision. (Tr. at 28).

## II.     Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F3d 1155, 1158 (11th Cir. 2004) quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III. Discussion**

Ms. Abbruzzo worked for about 13 years as an electrical "lineman" for Alabama Power Company, but was terminated after she filed a discrimination charge. She then went to work for a private electrical company as a lineman, but suffered injuries when electrocuted in an accident on the job. The accident resulted in the loss of two fingers on her left, non-dominant hand, and scar tissue in her right hand. She later worked as a school bus driver, and then as a waitress, where she waited tables and had some managerial duties. She quit her restaurant job on her alleged onset date. Since

quitting work, Ms. Abbruzzo has stated that a typical day involves playing computer games or reading Facebook, watching TV, taking short walks, talking on the telephone, cooking simple meals, and going shopping. She often spends time at the lake with her boyfriend.

Ms. Abruzzo alleges that the ALJ's decision should be reversed and remanded because, she asserts, the physical and mental RFC findings are not based on substantial evidence. (Doc. 10). Specifically, she argues that the ALJ improperly gave weight to the opinion of a non-medical consultant in assessing the physical RFC, failed to make a function-by-function assessment of her RFC as required by SSR 96-9p, and left the "sit/stand option" insufficiently specific. (Doc. 10, pp. 7-8). In addition, she argues that the ALJ failed to properly address the claimant's mental problems in his hypothetical question to the vocational expert. (Doc. 10, p. 12).

The Court must be aware that opinions such as whether a claimant is disabled, the what the claimant's residual functional capacity is, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and

the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

### A. The Physical RFC

The plaintiff first argues that the ALJ improperly relied upon the opinion of a disability specialist who was not an acceptable medical source, and that he failed to properly assess the RFC by performing a function-by-function assessment. (Doc. 10 pp. 5-9). The Commissioner has responded that the ALJ properly considered the entire record in deriving the RFC, and that the hypothetical questions posed to the vocational expert properly provided for all of Ms. Abbruzzo's physical limitations. (Doc. 11, pp. 5-11). The Commissioner concedes that the ALJ erroneously referred to the disability examiner as a "medical consultant,"[3] but asserts that the error was harmless because the ALJ's ultimate RFC finding was more restrictive than the examiner's finding and was supported by the other evidence in the record. (*Id.*).

---

[3] The ALJ gave partial weight to the assessment of Ashley N. Harris, a Single Decision Maker ("SDM") who prepared the physical residual functioning capacity assessment. (Tr. at 306-13). Federal law permits states to test modifications to the disability determination process. *See* 20 C.F.R. § 404.906. To expedite the processing of applications, SDMs have been authorized to make initial disability determinations in Alabama without the signature of a medical consultant. *See Malone v. Colvin*, No. 5:12-cv-514-LSC, 2013 WL 4502075 (N.D. Ala. Aug. 22, 2013)

The RFC describes the work that the claimant "is still able to do despite the limitations caused by his or her impairments." *Crow v. Commissioner*, 571 Fed. Appx. 802, 805 (11th Cir. 2014), quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ considered all of the evidence in the record in determining the claimant's RFC. *Id.* The RFC is based upon "all relevant medical and other evidence[] of a claimant's remaining ability to work despite his impairment." *Castle v. Colvin*, 557 Fed. Appx. 849, 852 (11th Cir. 2014). An RFC can be determined "even without a physician's assessment" in cases where the medical evidence shows "relatively little physical impairment." *Castle*, 557 Fed. Appx. at 854. In *Siverio v. Colvin*, the appellate court noted that an ALJ's reliance on the opinion of a "single decision maker" who is not a physician can be error where the ALJ falsely believed the SDM was a physician, and where he gave the SDM's assessment "significant weight." 461 Fed. Appx. 869, 872 (11th Cir. 2012). However, the Eleventh Circuit Court of Appeals likewise has noted that a mistaken reference to an SDM as a doctor may be harmless error where "the ALJ stated that he considered *all* of the evidence in the record, which also included opinions by [claimant's] treating physician and the non-examining physician, both of whom were medical doctors and there is nothing to indicate that the opinion of the SDM was anything more than cumulative of other evidence, let alone dispositive." *Cooper v. Colvin*, 521 Fed. Appx. 803, 807 (11th Cir. 2013); *see also Malone*,

2013 WL 4502075 at *4-5.  Moreover, opinion evidence by a physician regarding the plaintiff's physical limitations is not essential to a finding that denies benefits.  *Malone*, 2013 WL 4502075 at *5.

In this case, the ALJ relied upon the July 2010 imaging of the claimant's lumbar vertebra, the October 2010 consultative examination with a physician, subsequent clinic records, and pain clinic records.  (Tr. at 24).  The ALJ further relied upon the claimant's own testimony and reports to the SSA, including the fact that the claimant was able to "go grocery shopping, use the computer, and drive."  (Tr. at 25).  The ALJ noted that claimant's reports that she was unable to use her hands freely was contradicted by her ability to work a 40-hour week as a bus driver and a waitress before her onset date, while there had been no evidence of any substantial change in the impairments to her hand at or after the onset date.  Although the ALJ gave "partial weight" to the SDM's report and once referred to Harris as a "State agency medical consultant," he later referred to her only as a "State agency consultant," and he ultimately found that Ms. Abbruzzo is more limited than the state agency consultant had determined.  Clearly, these erroneous references by the ALJ were harmless error as his assessment of her RFC capacity was not significantly influenced by the SDM.

The plaintiff further argues that the ALJ erred in failing to perform a "function-by-function" analysis. Social Security Ruling 96-9p defines an RFC assessment as "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to perform work-related activities." SSR 96-9p, 1996 WL 374185 (July 2, 1996). The functions of sedentary work are:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). In his determination, the ALJ discussed Ms. Abruzzo's claims, history, daily activities, and medical records. He then determined that the evidence in the record indicates that Ms. Abruzzo had an RFC that allowed her to perform sedentary work with certain limitations. (Tr. at 23-27). The ALJ's written opinion takes into account the medical and non-medical evidence in the record prior to making his RFC determination.

The purpose of the "function-by-function analysis" requirement is to ensure that the ALJ determines, based on the entire record, that the claimant is able to perform the functions required in a particular classification of work. An "analysis of

the evidence and statement that [the claimant] could perform [sedentary] work indicate[s] how much work-related activity [the claimant can] perform" because SSR 96-9p defines the amount and type of work-related activity required for sedentary work. *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007). In this jurisdiction, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted).

In this case, in determining the plaintiff's ability, the ALJ specifically instructed the VE to consider an employee who needed the option to sit or stand at will. (Tr. at 57.) *See Carter v. Commissioner of Soc. Sec.*, 411 Fed. Appx. 295, 298 (11th Cir. 2011)(holding that failure to pose a hypothetical that included all of the impairments was harmless error where the question "sufficiently encompassed" the claimant's limitations); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). A review of the ALJ's RFC determination indicates to the court that the ALJ did consider Ms. Abbruzzo's medical condition as a whole in making her RFC determination and, therefore, fulfilled the requirement of a function-by-function analysis. *Castel v. Commissioner of Social Security*, 355 Fed. Appx. 260, 263 (11th Cir. 2009). Likewise, his

"sit/stand option" is specified in the question to the VE, that is, that she be able to sit or stand at will. This is sufficiently specific.

Accordingly, the ALJ's finding as to the plaintiff's physical RFC is supported by substantial evidence.

### B. Consideration of Mental Impairments

The plaintiff also challenges the ALJ's finding regarding mental impairments, asserting that he did not address concentration, persistence, pace or the ability to respond to work stress. (Doc. 10, pp. 10-13). Ms. Abbruzzo further challenges the ALJ's failure to provide more restrictive mental limitations than "only casual contact with the public and coworkers." (*Id.*)

The ALJ determined that Ms. Abbruzzo had "severe" depression, anxiety, and bipolar disorder. He further found that she had only moderate limitations in activities of daily living, social functioning, and concentration, persistence, and pace. (Tr. at 21). He noted that "[n]either the claimant's testimony, her reports to the Administration nor other substantial evidence ... supports finding that the claimant's mental impairments have prevented her from initiating or participating [in] activities of daily living independent of supervision or direction, or that the claimant would have serious difficulty performing these activities in a suitable manner, on a

consistent, useful, routine basis, or without undue interruptions or distractions due to her mental impairments." (*Id.*)

A review of the entire decision demonstrates that the ALJ's determination is supported by substantial evidence. The claimant reported socializing with friends and her boyfriend, drinking beer at the lake, and having the ability to focus on computer games, reading, and television. The only allegation that she has trouble interacting with others at work is that she becomes "agitated" when her co-workers don't perform their share of the work. The ALJ considered the opinions of consultative psychologist Catherine Prince; however, he gave them only partial weight, noting that the difficulties documented were not consistent with the descriptions of daily activities reported by Ms. Abbruzzo and by her mother. (Tr. at 26). Ms. Prince gave Ms. Abbruzzo a Global Assessment of Functioning score of 55, which was considered by the ALJ, and which undisputedly indicates only moderate impairment in social, occupational, or school functioning. (Tr. at 25).

The ALJ gave great weight to the assessment of the State agency's psychological consultant in reaching his conclusions about Ms. Abbruzzo's mental impairments. (Tr. at 26). Dr. Estock found the claimant to have only moderate or not significant limitations. (Tr. at 314-16). He opined that she was able to understand, remember, and carry out simple instructions, attend and concentrate for 2-hour

Page 15 of 17

periods on simple tasks with customary breaks and rests, and could benefit from a flexible schedule. (Tr. at 316). He further determined that her interaction with the public should be casual, and that interaction with supervisors and co-workers should be non-confrontational. (*Id.*) The ALJ assessed Ms. Abbruzzo's mental RFC by incorporating the expert opinions with the claimant's own reports of her daily activities, and accommodated her limitations by restricting work to casual interactions.

      The ALJ's decision was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that plaintiff's mental conditions did not cause disabling limitations and instead shows that she could perform some work.

## IV.     Conclusion

Upon review of the administrative record, and considering all of Ms. Abbruzzo's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and is in accord with the applicable law.  A separate order will be entered affirming the Commissioner's decision and dismissing this case with prejudice.

DATED the 20th day of February, 2015.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE